IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

JUL 2 9 2011

Charles Edward Blansett,          )
    Petitioner,                 )
                         )
v.                                )          **1:10cv999 (CMH/JFA)**
                         )
Gene M. Johnson,                  )
    Respondent.                 )

## MEMORANDUM OPINION

Charles Edward Blansett, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions in the Circuit Court for Caroline County, Virginia of rape, sodomy, violation of a protective order, assault and battery, and two counts of abduction. Respondent filed a Motion to Dismiss and Rule 5 Answer, with a supporting brief and numerous exhibits. Blansett was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a reply. For the reasons that follow, Blansett's claims must be dismissed.

### I. Background

Petitioner Charles Blansett ("Blansett") separated from his wife Cheryl on July 18, 2005. The juvenile and domestic relations district court issued an emergency protective order on August 1, 2005, prohibiting Blansett from having any contact with Cheryl and their two children. On August 2, 2005, the juvenile court issued a preliminary protective order reiterating that Blansett must "refrain from having contact with" Cheryl and the two children. See Ct. App. Va. Per Curiam Order, Dec. 28, 2007, at 4.

Nevertheless, Blansett entered Cheryl's home without permission on August 4, 2005. He was carrying a baseball bat and a large black plastic bag, and he confronted her while she was

1

taking a bath. He blamed Cheryl for keeping him from seeing his children. He threatened to hit Cheryl with the baseball bat if she got out of the tub, forcing her to stay there for ninety minutes. Cheryl got Blansett to let her out of the tub only by promising to let him see the children, and Blansett told Cheryl he was going to kill her if she didn't let him have the children. Blansett also told Cheryl that he had paid someone to kill Cheryl if he got arrested, so she did not contact the police. Id. at 7.

On August 7, 2005, Blansett had the two children at his grandmother's house in Spotsylvania, Virginia, where he had been living since the separation. He telephoned Cheryl that day to tell her that he would be returning the children around 3:00 PM and he wanted them all to go fishing. Blansett came without the children and entered the house to find Cheryl's mother, Mrs. Todd, in the living room with Cheryl. Blansett asked Cheryl into the bedroom to talk. While Cheryl sat on the bed, he approached her from behind and hit her in the back of the head, rendering her unconscious. Id. at 4.

When Cheryl regained consciousness, Blansett was binding her hands behind her back with duct tape, and he had already placed tape over her mouth. Id. at 4. He left the bedroom momentarily and took Mrs. Todd's walker, which she needed to move because she had suffered a stroke and was paralyzed on one side. When she told Blansett that she needed the walker in case she had to go to the bathroom, he said, "You sit there and piss on yourself, bitch. I don't care." Id. at 9. Blansett returned to the bedroom with Mrs. Todd's walker, then removed Cheryl's clothes and his pants and engaged in vaginal and anal sex while Cheryl remained bound. Mrs. Todd heard Cheryl "hollering and crying and telling him to stop...[he] was hurting her, and somebody help her, [but Mrs. Todd] couldn't help her because he had [her] walker." Id. at 4-5. Blansett cut the tape when he was finished, returned the walker to Mrs. Todd, then forced

2

Cheryl to drive to his grandmother's house, pick up the children, and go fishing with them on the lake. Id. at 4-5, 9.  Specifically, Blansett told Cheryl that "if [she] didn't behave while [they] were out there, he would throw [her] in the lake, and he would let the kids watch him drown [her]." Id. at 7.  Cheryl drove her car to Blansett's grandmother's house and Blansett followed behind in his grandmother's car.  At Blansett's grandmother's house, Blansett, Cheryl, and the two children got into Cheryl's car.  Blansett laid his knife on the dashboard and told Cheryl to drive. Id. at 7.

Cheryl was scared and nauseous while driving to the lake.  They stopped at a store where Blansett bought snacks and bait, but he took the keys and Cheryl's cell phone when he went inside.  At the lake, Blansett told Cheryl to sit nearby while he fished with the two children. Because the oldest son said he felt sick, they left after about an hour and returned to Blansett's grandmother's house.  When Blansett left the car, he told Cheryl that he was going to get the keys to his own car and follow her and the children back to her home.  When he reached the porch, Cheryl drove to a friend's house and someone contacted 911. Id.

Cheryl went to the hospital and was examined by Sexual Assault Nurse Examiner Shannon Brooks around 8:30 PM on August 7, 2005.  The nurse observed "a tacky substance on Cheryl's arms just above her wrists, and eleven-inch long scratch or abrasion on her left scapula, and 'swelling or edema' at the 10:00 o'clock [sic] position of Cheryl's anal area[,] indicating blunt force trauma." Id. at 4-5.

On December 7, 2006 in the Circuit Court for Caroline County, Virginia, a jury convicted Blansett of rape, sodomy, two counts of abduction, assault and battery, and violating a protective order. Commonwealth v. Blansett, Case Nos. CR05000443, CR05000442, CR05000444, CR05000446, CR05000445, CR05000452.  The court followed the jury's recommendation and

sentenced him to eight years of imprisonment for the rape conviction, eight years imprisonment for the sodomy conviction, six months imprisonment for each abduction conviction, six months imprisonment for the assault and battery conviction, and six months imprisonment for the conviction of violating a protective order.

Blansett pursued a direct appeal to the Court of Appeals of Virginia, arguing, inter alia, that there was insufficient evidence that he had abducted Mrs. Todd.  The Court of Appeals denied the petition for appeal on December 28, 2007, a three-judge panel of the Court of Appeals denied the petition on March 5, 2008, and the Court of Appeals denied the petition for rehearing on March 18, 2008.  Blansett v. Commonwealth, R. No. 0982-07-2.  The Supreme Court of Virginia refused Blansett's petition for appeal on June 30, 2008 and denied the petition for rehearing on September 18, 2008. Blansett v. Commonwealth, R. No. 080542.

Blansett filed a petition for writ of habeas corpus in the Supreme Court of Virginia on December 23, 2008, arguing, inter alia, that his rights under Brady v. Maryland, 373 U.S. 83 (1963), had been violated, he had received ineffective assistance of counsel, and alterations to the indictments under which he was convicted rendered them void.  The court dismissed the petition on May 5, 2009. Blansett v. Director, Dep't of Corr., Case No. 082585.

Blansett then filed a "Motion to Vacate Void Judgment" in the Circuit Court for Caroline County, Virginia in November of 2008, which was denied July 8, 2009.  He appealed to the Supreme Court of Virginia, which denied his appeal on August 12, 2010.  Blansett v. Commonwealth, R. No. 091678.

Meanwhile, Blansett had filed a federal petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court on September 3, 2009.  See Blansett v. Johnson, Case No. 1:09cv814 (CMH/TRJ).  By Order dated October 21, 2009, that petition was dismissed for

failure to exhaust all claims because the Motion to Vacate Void Judgment was still pending in the Supreme Court of Virginia.

Sometime before August 24, 2010, Blansett filed the instant federal habeas petition,[1] raising the following claims:

    (1) His conviction was obtained in violation of <u>Brady</u> because the prosecution failed to disclose evidence favorable to the defendant.

    (2) He received ineffective assistance of counsel because his attorney failed (a) to preserve issues for appeal, and (b) to object to the prosecution's failure to provide forensic analysis of eight of the nine pieces of physical evidence.

    (3) The trial court erred in allowing petitioner to be convicted of abducting Mrs. Todd because his actions did not fit the definition of abduction under the law.

    (4) The indictments under which he was convicted were void because they were changed before trial without being presented to the grand jury.

Based on the pleadings and record before this Court, it is uncontested that Blansett exhausted all of his claims as required under 28 U.S.C. § 2254, with the exception of claim (2)(a), which is incapable of exhaustion. Accordingly, this matter is now ripe for review.

## II. Procedural Default and Exhaustion

A. Claims (1) and (4)

Blansett's claim (1) (alleging <u>Brady</u> violations) and claim (4) (alleging the indictments were void) are both barred from federal review as a result of the Supreme Court of Virginia's finding of procedural default. A state court's finding of procedural default is entitled to a

---

[1] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials. <u>Lewis v. City of Richmond Police Dep't</u>, 947 F.2d 733 (4th Cir. 1991); <u>see also</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988). The petition was signed by petitioner on August 16, 2009. However, the letter accompanying the petition explains that petitioner enclosed a copy of the same petition that was previously dismissed on October 21, 2009, with one section amended to reflect that he no longer has anything pending before the Supreme Court of Virginia. The postage stamp on the envelope for mailing the instant petition is dated August 24, 2010, and the petition was received in the Clerk's Office on September 3, 2010.

presumption of correctness, <u>Clanton v. Muncy</u>, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met, <u>Harris v. Reed</u>, 489 U.S. 255, 262-63 (1989).  First, the state court must explicitly rely on the procedural ground to deny petitioner relief.  <u>Id.</u>  Second, the state procedural rule furnished to default petitioner's claim must be an independent and adequate state ground for denying relief.  <u>Id.</u> at 260; <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991).  When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. <u>Harris</u>, 489 U.S. at 260.

Here, the Supreme Court of Virginia dismissed claims (1) and (4) as defaulted pursuant to <u>Slayton v. Parrigan</u>, 205 S.E.2d 680 (Va. 1974) (holding that a claim is procedurally defaulted if the petitioner could have raised it on direct appeal but did not). <u>See</u> Sup. Ct. Va., May 5, 2009, at 1-3, 4.  The Fourth Circuit has held consistently that "the procedural default rule set forth in <u>Slayton</u> constitutes an adequate and independent state law ground for decision." <u>Mu'min v. Pruett</u>, 125 F.3d 192, 196-97 (4th Cir. 1997).  The issue of procedural default was raised in the brief in support of the motion to dismiss, and Blansett was provided the opportunity to respond. <u>See</u> <u>Yeatts v. Angelone</u>, 166 F.3d 255, 261-62 (4th Cir. 1999) (finding a federal habeas court's <u>sua sponte</u> dismissal of procedurally defaulted claims permissible where petitioner is provided notice and an opportunity to argue against dismissal).

Blansett argues that he personally raised an oral objection as to the alleged <u>Brady</u> violations at trial and states that he pursued this claim on direct appeal, thus rendering the Supreme Court of Virginia's finding that claim (1) was procedurally defaulted under <u>Slayton</u> to be in error.  At trial, however, Blansett's attorney stated that he was satisfied that the lab results they had received would be sufficient. <u>See</u> Cir. Ct. Tr., Dec. 7, 2006, at 5-12.  Blansett's own

oral objection was not sufficient to preserve this issue for appeal when his attorney negated that objection with his own statement.[1]   Therefore, Blansett has failed to demonstrate cause for his procedural default or prejudice resulting therefrom.   Because he has also failed to show that dismissing this claim would result in a fundamental miscarriage of justice, claim (1) will be dismissed as procedurally defaulted.

As to claim (4), Blansett simply reiterates his arguments that changing the indictments without presenting the new indictments to the grand jury violated his constitutional rights.   He does not submit any arguments about the cause for the procedural default of this claim or prejudice resulting therefrom, nor does he present any arguments as to how dismissing this claim would result in a fundamental miscarriage of justice.   Therefore, claim (4) will also be dismissed as procedurally defaulted.

B. Claim (2)(a)

In the brief in support of the motion to dismiss, respondent noted that Blansett had not pursued claim (2)(a), in which he alleges his attorney was ineffective for failing to preserve certain issues for appeal, in the state court proceedings as required.   Respondent argued that Blansett would now be precluded from bringing this claim in state court because it would be procedurally defaulted as time-barred under Virginia Code § 8.01-654(A)(2), and also barred by the prohibition against successive state habeas petitions under Virginia Code § 8.01-654(B)(2). Because claim (2)(a) is therefore simultaneously exhausted and defaulted for the purposes of federal habeas review, see Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), a federal court is

---

[1] Notably, in claim (2)(b) of this petition, Blansett has argued that he received ineffective assistance of counsel, in part due to this statement.  Claim (2)(b) has been reviewed on the merits and is discussed below.

not permitted to review this claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. See Harris, 489 U.S. at 260.

Blansett was provided the opportunity to respond to respondent's argument regarding claim (2)(a), but his argument regarding his claims of ineffective assistance focused only on claim (2)(b), which involves the failure of his attorney to object to the prosecution's failure to perform forensic analysis on specific pieces of physical evidence, and general arguments about the Strickland standard. He did not submit any arguments to demonstrate cause and prejudice for his procedural default of claim (2)(a) or to show that dismissing this claim as procedurally defaulted would result in a fundamental miscarriage of justice. See Reply at 5-7, ECF No 15. Therefore, claim (2)(a) will be dismissed as simultaneously exhausted and procedurally defaulted for the purposes of federal habeas review.

Because Blansett exhausted remaining claims (2)(b) and (3) as required under 28 U.S.C. § 2254, they will be reviewed on the merits.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially

8

indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## IV. Analysis

### A. Claim (2)(b): Ineffective Assistance Related to Forensic Analysis

In claim (2)(b), Blansett argues counsel provided ineffective assistance by failing to object to the prosecution's failure to perform forensic analysis on certain pieces of physical evidence. The Supreme Court of Virginia rejected this claim on the merits as failing to satisfy the standard for ineffective assistance of counsel articulated in Strickland v. Washington, 466 U.S. 668 (1984). Blansett v. Director, Dep't of Corr., Case No. 082585. In reviewing the state court's decision as to claim (2)(b), Blansett fails to show that the result was either contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id.

9

at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

To evaluate Blansett's claims of ineffective assistance of counsel, the Supreme Court of Virginia explicitly relied on the two-prong test from Strickland. See Sup. Ct. Va., May 5, 2009, at 5. Blansett has therefore failed to show that its decisions were "contrary to" clearly established federal law. See Williams, 529 U.S. at 413.

The Supreme Court of Virginia also reasonably applied the Strickland standard to the facts of Blansett's case in finding Blansett's claim failed both the performance prong and the prejudice prong of the Strickland test. Specifically, the Supreme Court of Virginia reasonably concluded as follows:

> The record, including the trial transcripts, the certificates of analysis, and the affidavit of counsel, demonstrates that the items tested demonstrated that the adhesive found on Cheryl Blansett's wrist did not match the fragment of the tape that was tested, that only Cheryl's DNA was found on the fragment of tape, and that DNA belonging to a third person was found on Cheryl's thighs. Petitioner admitted to engaging in sex with Cheryl Blansett. As such, counsel was satisfied with the testing results that were received. Counsel avers that he informed the court that was satisfied that the results they had received would be sufficient. Petitioner fails to proffer what additional information would have been discovered had additional testing been done or how that information would have been exculpatory. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

See Sup. Ct. Va., May 5, 2009, at 5. Blansett has also failed to rebut the presumption that the Supreme Court of Virginia's factual findings were correct by clear and convincing evidence. See Miller-El, 545 U.S. at 240. Blansett has therefore failed to demonstrate that the Supreme Court of Virginia's dismissal of his claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of the facts, and claim (2)(b) will accordingly be dismissed.

B. Claim (3)

In claim (3), Blansett claims that the trial court erred by allowing him to be convicted of abducting Mrs. Todd because his actions did not fit the definition of abduction under the law. The Court of Appeals of Virginia rejected this claim on the merits, and its reasoning is imputed to the Supreme Court of Virginia, which refused the appeal without explanation. See Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991). Specifically, the Court of Appeals of Virginia discussed caselaw in Virginia regarding abduction and explained that "the physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception, without any asportation of the victim from one place to another is sufficient [to prove abduction]." See Ct. App. Va. Per Curiam Order, Dec. 28, 2007, at 9 (citation omitted). The court then noted that "Todd had suffered a stroke and was partially paralyzed" and reasoned that "[t]he evidence established she was unable to move without the walker and [Blansett] detained Todd by taking away her walking device." See id. In reviewing the state court's decision as to claim (3), Blansett fails to show that the result was either contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

The Court of Appeals of Virginia's holding was not "contrary to" federal law because it fits within the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, 319 (1979), in which the Court explained that the standard for analyzing a claim of insufficiency of the evidence for purposes of a federal due process analysis is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Williams, 529 U.S. at 412-13. Manifestly, the Court of Appeals of Virginia's conclusion that a the evidence was sufficient to satisfy the elements for abduction under Virginia state law was a reasonable application of this standard to the facts of Blansett's case. Id. at 413. Finally, Blansett has not provided clear and convincing evidence to rebut the presumption that the relevant factual findings by the Court of Appeals of Virginia as to this claim were correct. See Miller-El, 545 U.S. at 240. Therefore, Blansett has not demonstrated that the state court's decision as to claim (3) was contrary to, or an

unreasonable application of, federal law, or based on an unreasonable determination of the facts, and this claim will be dismissed.

## V. Conclusion

For the above stated reasons, this petition will be dismissed.  An appropriate Order shall issue.

Entered this __29th__ day of ____July____ 2011.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia